UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

CARLTON FORD,

                  Plaintiff,           09 Civ. 2660

   -against-                      OPINION

FOURTH LENOX TERRACE, HAMPTON
MANAGEMENT, JENNIFER FILLIPELLI
and OLNICK ORGANIZATION,

                  Defendants.

------------------------------------X

A P P E A R A N C E S:

      Attorneys for Plaintiff

      VIVIAN M. WILLIAMS & ASSOCIATES, P.C.
      One Grand Central Place
      60 East 42nd Street, 46th Floor
      New York, NY  10165
      By:  Vivian M. Williams, Esq.

      Attorneys for Defendants

      JEFFREY M. STEINITZ, ESQ.
      118-35 Queens Boulevard, 9th Floor
      Forest Hills, NY  11375

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/18/11

**Sweet, D.J.**


The defendants Fourth Lenox Terrace Associates s/h/a Fourth Lenox Terrace ("Fourth Lenox"), Hampton Management Associates, LLC, s/h/a Hampton Management and Jennifer Fillipelli s/h/a Jennifer Fillipelli and The Olnick Organization, Inc. s/h/a Olnick Organization ("Olnick") (hereinafter collectively referred to as "Defendants") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure, to dismiss the complaint of plaintiff Carlton Ford ("Ford" or the "Plaintiff").  Ford has cross-moved for leave to file his Third Amended Complaint ("TAC"). Based on the facts and conclusions set forth below, the motion to dismiss the complaint is granted, and the cross-motion to file the TAC is denied.


This is essentially a landlord/tenant dispute previously resolved by a stipulation and general release executed by Ford, which his complaint seeks to set aside. By his cross-motion, he seeks to add his wife and daughter as parties.  Regardless of sympathy resulting from Ford's alleged mental condition and that of his daughter, concepts of process and finality require the result which follows.

1

**Prior Proceedings**

Ford filed his complaint on March 23, 2009 alleging a violation of the Fair Housing Act, 42 U.S.C. § 3604, arising out of the alleged discrimination of Defendants in denying reasonable accommodation to Ford, alleged to be suffering from a severe brain disorder.

The Defendants' motion for summary judgment, unaccompanied by a Local Rule 56.1 Statement, was heard on February 2, 2011 together with Ford's cross-motion for leave to file a TAC adding his wife and daughter as plaintiffs.

**The Facts**

By the Defendants' affidavits the following facts are set forth.

Fourth Lenox owns a multi-unit residential apartment building located at 40 West 135th Street in the City and State of New York, County of New York. Fourth Lenox is a general partnership comprised of several

2

partners and is managed by Hampton Management.  Ford and his mother, Marie Ford, signed a lease for apartment 1S at 40 West 135th Street.  Apartment 1S is rent stabilized pursuant to the Rent Stabilization Laws of the City of New York.

In or about November 2006, Hampton Management conducted a primary residence inquiry regarding Ford and obtained information that while Ford's wife, Mary Ford, and an adult child resided in Apartment 1S, Ford permanently resided at 2766 Sedgwick Avenue, Bronx, NY.

In or about November 2006, Ford contacted Hampton Management and indicated that he had been confined to Rivington House Nursing Home, that he would be required to remain at the facility indefinitely, that he was "being wheeled into surgery as we speak," and that he wished to have his mother's name removed and his wife's name added to the lease for apartment 1S.  Unbeknownst to Defendants, Ford's mother, Marie, passed away on December 25, 2005.

Further inquiry by Hampton Management indicated that contrary to Ford's representations, while he had been a resident at Rivington House, he was permanently

3

discharged on November 15, 2006.  Hampton Management caused a predicate notice of intent not to renew and notice of termination to be served on January 30, 2007.  The investigation initiated by Hampton Management indicated that Ford primarily resided at 2766 Sedgwick Avenue, Apartment 4B, Bronx, New York.

On May 4, 2007, Fourth Lenox commenced a summary holdover proceeding, entitled Fourth Lenox Terrace Associates v. Carlton A. Ford, et al., New York County Civil Court, Index No. 250939/07.  On September 16, 2008, Fourth Lenox and Ford entered a stipulation of settlement. The settlement included discontinuing the holdover proceeding and offering Ford a renewal rent stabilized lease.

Shortly thereafter, the Fords stopped paying rent.  Following service of a predicate notice, on December 16, 2008, a summary non-payment proceeding entitled Fourth Lenox Terrace Associates v. Carlton A. Ford, et al., New York County Civil Court, Index No. 252731/08, was commenced against Ford for rental arrears in excess of $12,000.00. The non-payment proceeding was converted to a holdover proceeding.

4

Ford was represented by counsel.  Following negotiations between counsel and the parties, the parties agreed to settle the matter.  The stipulation of settlement, dated April 14, 2009, was signed by Ford, his attorney, Fourth Lenox and attorneys for Fourth Lenox.  The stipulation of settlement was so ordered by Judge Ruben Martino on April 14, 2009.  The stipulation of settlement contained the following:

- The stipulation of settlement and each of its contents was entered into voluntarily, with the full advice and consent of counsel (Aff. of Jennifer Filippelli Aff., Ex. C ¶ 18 ("Stipulation"));

- Ford was not under duress or the influence of any medication or substance that impairs his mental abilities (Stipulation ¶ 19);

- The sole occupant of apartment 1S is Belinda Mackay, an adult (Stipulation ¶ 3);

- Ford permanently vacated apartment 1S and resides at 2766 Sedgwick Avenue, Apartment 4B, Bronx, NY (Stipulation ¶ 6);

5

- Marie Ford, Ford's wife, permanently vacated apartment 1S (Stipulation ¶ 7);

- Ford consents to a final Judgment of possession on behalf of himself and Mackay (who appeared in the action as well) (Stipulation ¶ 9);

- Ford consents to a warrant of eviction which would be stayed for one month (Stipulation ¶ 10);

- Ford would not apply for a stay of the warrant of eviction (Stipulation ¶ 12);

- The Article 78 proceeding filed by Ford appealing the Division of Human Rights decision dated March 30, 2009 (which found that Lenox Terrace and Hampton Management did not discriminate against Ford based upon either disability or race) would be discontinued, with prejudice (Stipulation ¶ 15(a)); and

- Ford would forthwith withdraw, with prejudice, his Division of Human Rights complaint (Stipulation ¶ 15(b)).

6

The stipulation of settlement contained the following general release:

> Ford hereby releases Fourth Lenox Terrace Associates, Lenox Terrace Management, Jennifer Filipelli, Hampton Management Co., The Olnick Organization, their agents, employees and attorneys from any and all cause(s) of action to date. As such, this stipulation is a GENERAL RELEASE to all entities named in this Paragraph and/or any related entity of the parties named herein.

(Stipulation ¶ 15(d).)

In return for Ford's agreement to the terms of the stipulation, including the general release, Defendants waived twenty-five months of rent/use and occupancy at $649.15 per month totaling $16,229.77.  (Stipulation ¶ 17.)

Judge Martino questioned Ford under oath regarding, inter alia, whether or not he was under duress and whether or not he understood the terms and consequences of executing a general release including questions concerning the general release.  (Ex. F.)  Judge Martino so ordered the Stipulation of Settlement. (Ex. C at 1; Ex. F.)

By affidavit, Ford states that he never expressly or impliedly surrendered his home at 40 West 135th Street,

7

Apt. 1S and "at all times openly retained it as [his] primary residence." (Aff. of Carlton Ford ¶ 4 ("Ford Aff.").) Ford maintains that he had known Eliot Cherson, Fourth Lenox's counsel in the proceedings before Judge Martino, for many years (Ford Aff. ¶¶ 10-11); that Mr. Cherson had been counsel to various real estate companies for which Ford had been the property manager (Ford Aff. ¶ 11); that Mr. Cherson referred Ford as a tenant to Fourth Lenox (Ford Aff. ¶ 12); and that Mr. Cherson "appointed himself as opposition counsel in [Ford's] case because of his personal involvement with [Ford] and to mend his reputation with" Fourth Lenox (Ford Aff. ¶ 13).

**Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact remains and undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co., 22 F.3d 414, 418 (2d Cir. 1994). The Court must view evidence in the light most favorable to the non-movant and draw all inferences in his favor. See Tufariello v. Long Island R.R. Co., 458 F.3d 80, 85 (2d Cir. 2006)

(citing <u>Colavito v. New York Organ Donor Network, Inc.</u>, 438 F.3d 214, 217 (2d Cir. 2006)); <u>Inst. for Shipboard Educ.</u>, 22 F.3d at 418 (citations omitted); <u>Twin Labs, Inc. v. Weider Health & Fitness</u>, 900 F.2d 566, 568 (2d Cir. 1990).

If issues of material fact exist or a reasonable jury could return a verdict in favor of the non-moving party, summary judgment must be denied. <u>Gallo v. Prudential Residential Services, L.P.</u>, 22 F.3d 1219, 1223-4 (2d Cir. 1994); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). However, summary judgment may be granted if the evidence in favor of the non-movant is "merely colorable" or so insufficient such that no rational trier of fact could find in its favor. <u>Anderson</u>, 477 U.S. at 248-50 (citing <u>First National Bank of Ariz. V. Cities Service Co.</u>, 391 U.S. 288-90 (1968); <u>Dombrowski v. Eastland</u>, 387 U.S. 82 (1967)).

The burden of proving that no material issue of fact remains in dispute rests on the moving party. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995). However, to avoid summary judgment, the non-movant must set forth specific factual allegations, and

conclusory assertions are not sufficient to defeat summary judgment. Fed. R. Civ. Pro. 56(e); Celotex, 477 U.S. at 324; Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions that are conclusory."); Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" (emphasis in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986))); BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (stating it is insufficient for the party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts" and finding that "[s]uch conclusory statements are insufficient to raise a triable issue of material fact").

Local Civil Rule 56 directs litigants to file statements and counter-statements of material facts, and requires that each factual statement be followed by a citation to admissible evidence, in accordance with Federal Rule 56(e). A moving party's "[f]ailure to submit such a

10

statement may constitute grounds for denial of the motion."
Local Rules of the United States District Courts for the
Southern and Eastern District of New York, 56.1(a).
Conversely, the consequence of the non-moving party's
failure submit a Rule 56.1 opposition is that "[a]ll
material facts set forth in the statement required to be
served by the moving party will be deemed to be admitted
unless controverted by the statement required to be served
by the opposing party." Id.; see, e.g., Gubitosi v. Kapica,
154 F.3d 30, 31 n.1 (2d Cir. 1998)

    The Court may, in its discretion, overlook a
party's failure to comply with the local rules, including
Rule 56.1. See Holtz v. Rockefeller & Co., Inc., 258 F.3d
62, 73-74 (2d Cir. 2001).  Courts may proceeded to rule on
the basis of the underlying evidence in the absence of a
Rule 56.1 statement. See id.; Doe v. Nat'l Bd. of Podiatric
Med. Exam'rs, No. 03-CV-4034, 2004 WL 912599, at *3
(S.D.N.Y. Apr. 29, 2004); United States v. Abady, No. 03-
CV-1683, 2004 WL 444081, at *2-3 (S.D.N.Y. Mar. 11, 2004).
A court "may in its discretion, opt to 'conduct an
assiduous review of the record' even where one of the
parties has failed to file such a [Rule 56.1] statement."

11

Holtz, 258 F.3d at 73 (quoting Monahan v. New York City
Dep't of Corrections, 214 F.3d 275, 292 (2d Cir. 2000)).

Here, both parties have failed to file Local Rule
56.1 Statements.  Instead, Defendants have provided only
the affidavits of one Defendant and one attorney, with
supporting exhibits, and Plaintiff has submitted an
affidavit on his own behalf, with supporting documents.
However, in the interest of expedition and finality, the
Court will overlook this oversight and conduct a review of
the record before it.

**Motion for Summary Judgment is Granted**

Defendants' motion for summary judgment must be
granted, as the general release executed by Ford bars his
claim, and this Court lacks subject matter jurisdiction to
entertain a collateral attack upon a state judgment under
the Rooker-Feldman doctrine. See District of Columbia Court
of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v.
Fidelity Trust Co., 263 U.S. 413, 414-17 (1923).

"Under New York law, general releases are
governed by principles of contract law." Albany Savings

12

Bank, FSB v. Halpin, 117 F.3d 669, 672 (2d Cir. 1997)

(citing Mangini v. McClurg, 249 N.E.2d 386, 389 (N.Y.

1969)).  "It is well settled that New York law requires

that a release contain an explicit unequivocal statement of

a present promise to release defendant from liability. The

words must manifest the releasor's intent to discharge and

the dispositive element in determining the scope of a

release is the parties' intent." Henry Neuman v. Harmon,

965 F. Supp. 503, 509 (S.D.N.Y. 1997) (internal quotation

marks and citations omitted).


        "An unambiguous release 'should be enforced

according to its terms.'" Krumme v. Westpoint Stevens Inc.,

238 F.3d 133, 144-45 (2d Cir. 2000) (citing Booth v. 3669

Delaware, 703 N.E.2d 757, 758 (N.Y. 1998); Mangini, 249

N.E.2d at 390).  "Under New York law, a release that is

clear and unambiguous on its face and which is knowingly

and voluntarily entered into will be enforced." Pampillonia

v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998)

(citations omitted). "A release may not be treated lightly,

and should be set aside or reformed only under

circumstances and under rules which would render any other

result a grave injustice. Thus, a general release stands

absent duress, illegality, fraud, or mutual mistake."

Albany Savings Bank, FSB v. Halpin, 918 F. Supp 553, 557

(N.D.N.Y. 1996) (internal quotation marks and citations

omitted), rev'd on other grounds, 117 F.3d 669 (2d Cir.

1997); see also Cahill v. Regan, 5 N.Y.2d 292, 299 (N.Y.

1959) ("The effect of a general release, in the absence of

fraud or mutual mistake, cannot be limited or curtailed");

Marrietta Falconieri v. A & A Discount Auto Rental, et al.,

69 N.Y.S.2d 137, 138 (2d Dep't 1999) ("Where the language

with respect to the parties' intent is clear and

unambiguous, it will be given effect, regardless of one

party's claim that she intended something else.").


     The stipulation of settlement contained the

following release:

> Ford hereby releases Fourth Lenox Terrace
> Associates, Lenox Terrace Management, Jennifer
> Filipelli, Hampton Management Co., The Olnick
> Organization, their agents, employees and
> attorneys from any and all cause(s) of action to
> date. As such, this stipulation is a GENERAL
> RELEASE to all entities named in this Paragraph
> and/or any related entity of the parties named
> herein.

(Stipulation ¶ 15(d)).


     Ford was represented by counsel of his own

choosing in the Civil Court action that produced the

14

stipulation containing this general release.  That action was settled by the execution of the Stipulation, which was so ordered by Judge Ruben Martino on April 14, 2009.  Ford specifically represented in the stipulation that he was executing it voluntarily, with the full advice and consent of counsel and that he was not under duress or the influence of any medication or substance that impair mental abilities. (Stipulation ¶ 18).  In return for Ford's agreement to the terms of the stipulation, including the general release, Defendants waived twenty-five months of rent and occupancy at $649.15 per month, totaling $16,229.77.  (Stipulation ¶ 17).

Judge Martino questioned Ford to be certain that he understood the terms of the stipulation and release, and specifically questioned him on the consequences of executing the release.[1]

---

[1]  The colloquy was as follows:

| | |
|---|---|
| Court: | Was anybody forcing you to do this today? |
| Ford: | No. |
| Court: | And your attorney went over this with you? |
| Ford: | Yes. |
| Court: | Are you under any medical condition that - - |
| Ford: | No. |
| Court: | - - will - - inhibits your ability to understand - - |
| Ford: | No. |
| Court: | - - and make an agreement today? |
| Ford: | No. |
| . . . | |

The Rooker-Feldman doctrine provides that a federal district court has no jurisdiction to consider collateral attacks to state court judgments. Ackermann v. Doyle, 43 F. Supp. 2d 265 (E.D.N.Y. 1999). "The Rooker-

| Court: | Assuming that that's done [Ford relinquishes the apartment], then they agree to waive the $16,229.77 which is owed. The Article 78, at the Human Rights Division [alleging disability discrimination], under case number 10 128236 is discontinued with prejudice? |
| Ford: | Yes. |
| . . . | |
| Court: | And you withdraw your complaint with the . . |
| Ford: | I withdraw all complaints, yes. |
| . . . | |
| Court: | . . . Copy of the stipulation which I'll so order, is going to be filed in Supreme Court and you release Fourth Lenox Terrace of any claims. So, this is a general lease [sic]. So, you can't sue them for anything once this is over and they can't sue you either, I guess for the sixteen thousand. If you fail to comply with this agreement then they're able to evict you and then there's no waiver. So, the worst thing you can do is give up the apartment late because then two things happen. |
| Ford: | That - - that will not be a problem. |
| Court: | All right. But I just wanted you to be aware. Two things happen. |
| Ford: | I'm well - - I'm well aware of that. |
| Court: | One, they are able to do an eviction and second, they can now go after you for the sixteen thousand. |
| Ford: | I'm well aware of that. |
| Court: | So you don't want that. Make sure they get the key ahead of time. Get a receipt for it. I'm sure your attorney will want to instruct you further of anything else and this is being entered into voluntarily. Of course, with the advise [sic] of your counsel. You're not under any duress and no inference against either side, although he wrote it. I read this agreement. It's neutral as against either side. Okay. And that's it - - |
| Ford: | Yeah. |
| Court: | - - and I will so order it. |

(Cherson Aff. Ex. 15 at 19:11-23:11.)

Feldman doctrine . . . is confined to cases of the kind
from which the doctrine acquired its name: cases brought by
state-court losers complaining of injuries caused by state-
court judgments rendered before the district court
proceedings commenced and inviting district court review
and rejection of those judgments." Exxon Mobil Corp. v.
Saudi Basic Indus. Corp, 544 U.S. 280, 284 (2005).

        In this action, the language of the release is
unambiguous, and Ford does not argue otherwise.  Instead,
Ford asserts that the affirmative defense of release
pleaded by Defendants cannot bar his Federal Fair Housing
Act claims because of the circumstances surrounding his
execution of the release and subsequent allocution.  (Pl.
Mem. 2.)  His attack upon the validity of the April 14,
2009 judgment is precisely the kind of collateral attack
that is barred by Rooker-Feldman.[2]  Since the stipulation

---

[2]     Ford's attack on the validity of the stipulation is without merit
under New York law, in any event.  In Hallock v. State, 64 N.Y.2d 224
(1984), the New York Court of Appeals has held that:

        Stipulations of settlement are favored by the courts and
        not lightly cast aside . . . . This is all the more so in
        the case of "open court" stipulations . . ., where strict
        enforcement not only serves the interest of efficient
        dispute resolution but also is essential to the management
        of court calendars and integrity of the litigation process.
        Only where there is cause sufficient to invalidate a
        contract, such as fraud, collusion, mistake or accident,
        will a party be relieved from the consequences of a
        stipulation made during litigation.

17

was reduced to judgment, there is no basis for Ford's

opposition to Defendants' motion to dismiss on the grounds

of the release executed by Ford, which covers the subject

matter of this lawsuit.  Defendants' motion for summary

judgment is therefore granted.


## Motion for Leave to Amend is Denied


Ford has moved for leave to amend his pleadings

and to include his wife Mary and his disabled adult

daughter, Carla, pursuant to Rules 20 and 15.  Rule 15(a)

of the Federal Rules of Civil Procedure provides that leave

to amend a pleading "shall be freely given when justice so

requires." Fed. R. Civ. P. 15(a).  "Where it appears that

granting leave to amend is unlikely to be productive,

however, it is not an abuse of discretion to deny leave to

amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d

Cir. 1993) (per curiam).  One appropriate basis for denying

leave to amend is that the proposed amendment is futile.

Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2nd Cir.

---

Id. at 230 (citations omitted). Plaintiff's claims of duress are not
supported by the record. Moreover, Ford's subsequent acceptance of the
benefits of the stipulation is ratification of its terms and bars him
from making such claims. Weil, Gotshal & Manges LLP v. Fashion Boutique
of Short Hills, 56 A.D.3d 334, 335 (N.Y.A.D. 1st Dept., 2008)
(citations omitted).

2001) ("[E]ven if the amended complaint would state a valid
claim on its face, the court may deny the amendment as
futile when the evidence in support of the plaintiff's
proposed new claim creates no triable issue of fact and the
defendant would be entitled to judgment as a matter of law
under Fed. R. Civ. P. 56(c)") (citing, Azurite Corp. v.
Amster & Co., 844 F. Supp. 929, 939 (S.D.N.Y. 1994));
Nettis v. Levitt, 241 F.3d 186, 193 (2d Cir. 2001) ("One
appropriate basis for denying leave to amend is that the
proposed amendment would be futile because it fails to
state a claim"), overruled on other grounds by Slayton v.
Am. Exp. Co., 460 F.3d 215 (2d Cir. 2006); Health-Chem
Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here,
as here, there is no merit in the proposed amendments,
leave to amend should be denied.").

Here, amendment would be futile as to Ford, whose
claims are barred by the general release as discussed
above.

As to Mary and Carla, as with Ford, the gravamen
of the TAC[3] is the claim that Defendants engaged in a

---

[3]      Since Ford's motion is unsupported by an affidavit from either
Mary or Carla, and Ford fails to include in his affidavit any
allegations that the Defendants engaged in discriminatory practices

discriminatory practice by commencing the two summary

proceedings (the holdover and later non-payment

proceeding).  (TAC ¶ 26-30.)


With regard to Mary and Carla, Plaintiff has

pleaded only conclusions, stating nothing more than a claim

that Ford and Carla are individuals with actual and

perceived disabilities and that the two housing proceedings

were initiated by Defendants in order to enforce a

discriminatory policy on the basis of disability. (TAC ¶

23-30.)  These claims are insufficient to raise an

inference of misconduct.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory

statements, do not suffice." Ashcroft v. Iqbal, -- U.S. --,

129 S.Ct. 1937, 1949 (2009).


In any case, no triable issue of fact exists as

to Mary or Carla's potential claims, and Defendants would

be entitled to judgment as a matter of law.  In the first

Housing Court action (the holdover), neither Ford nor Mary

nor Carla asserted as a defense that they were

discriminated against by Defendants; nor did they commence

---

toward Mary or Carla, the Court only has the proposed TAC before it to
determine whether there is merit to this motion.

an action in a Court of competent jurisdiction against

Defendants alleging discrimination in which they sought a

stay of the Housing Court proceeding pendente lite.[4]


The record indicates that Mary and Carla moved

from Apt 1S between the initiation of the first (May, 2007)

and second (December 2008) housing proceedings.   Ford

states that after commencement of the first Housing Court

(holdover) proceeding, "Ford lost his wife, who left him

and took two of their daughters to Baltimore, Maryland."

(TAC ¶ 21.)   The September 16, 2008 stipulation that Ford

entered into which settled the first (holdover) proceeding

provided that Ford was renewing his rent stabilized lease

and that Belinda Mackey (Ford's step daughter) resides in

the apartment.[5]   (Cherson Aff. ¶ 23, Ex. 12.)   The

stipulation named no other residents.   (Id.) The only

parties named by Defendants in the second action were Ford,

Marie Ford (Ford's deceased mother), and Belinda Mackey.

Accordingly, the second action was commenced after Mary and

---

[4]     Had Ford done so, the Rooker-Feldman doctrine would not have
applied. See Exxon Mobil, 544 U.S. at 292; Hoblock v. Albany County Bd.
Of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

[5]     Mary's motion that she was entitled to a rent stabilized lease
was denied by Justice Martino (Cherson Aff. Ex. 9).   No appeal was
taken by Mary from that order.   Carla made no application to Lenox
Terrace for a rent stabilized lease nor did she join Mary's motion that
she was entitled to succession rights or a rent stabilized lease.

Carla had moved to Baltimore, and it was therefore not plausibly commenced for discriminatory reasons as to either of them.[6]

In sum, no facts establish any discrimination on the part of Defendants as to Mary or Carla.  No facts indicate that either the holdover or non-payment proceeding initiated by Defendants was the result of discrimination arising out of Carla's alleged autism or any other discriminatory reason.[7]  Accordingly, Plaintiff's motion for leave to amend is denied as futile.

**Conclusion**

---

[6]    No action was commenced alleging violations of the Fair Housing Act and no stay of the housing court proceedings was requested.

[7]    Indeed, the New York State Division of Human Rights twice found that there was no probable cause to believe that Fourth Lenox engaged in an unlawful discriminatory practice relating to housing because of disability and race/color in violation of New York law.  (Filipelli Aff. Ex. D, E.)

22

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiff's motion for leave to amend is denied.


It is so ordered.


New York, NY

July 15, 2011

ROBERT W. SWEET

U.S.D.J.